# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>VIKAS SINGLA | Criminal Action No.<br><br>1:21-CR-00228-MLB-RDC |

## DEFENDANT'S MOTION TO DISMISS
## FOR FAILURE TO STATE AN OFFENSE

Pursuant to Rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure, Defendant Vikas Singla, by and through counsel, respectfully files this Motion to Dismiss for Failure to State an Offense, showing the Court as follows:

## I. INTRODUCTION[1]

Fresh off of its stinging defeat in the United States Supreme Court over its overly aggressive and legally incorrect application of The Computer Fraud and Abuse Act of 1986 ("CFAA") in *Van Buren v. United States*, 141 S. Ct. 1648 (2021)—a case that originated in this district—the Justice Department has once again brought criminal CFAA charges against an American citizen for non-existent federal crimes. Specifically, the government has obtained a grand jury indictment

---

[1] The salient factual background is set forth in Mr. Singla's accompanying Motion for Early Issuance of Rule 17(c) Subpoenas, filed concurrently herewith, and is incorporated by reference as if fully set forth herein.

that charges Mr. Singla, a computer network security consultant, with eighteen felony offenses over which the United States lacks jurisdiction and which do not constitute federal crimes, because they do not involve an internet-connected computer as required by the CFAA. Moreover, seventeen of the eighteen CFAA charges are legally insufficient for failure to satisfy an additional element; namely, that Mr. Singla intentionally caused "damage" to each victim computer. Accordingly, the Indictment must be dismissed in its entirety as a matter of law.

## II. RELEVANT LEGAL AUTHORITY

### A. Pretrial Dismissal for Failure to State an Offense

The Federal Rules of Criminal Procedure authorize criminal defendants to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). This includes a motion to dismiss a criminal indictment for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). Such a motion is required to be filed pretrial "if the basis for the motion is then reasonably available." Fed. R. Crim. P. 12(b)(1).

### B. THE COMPUTER FRAUD AND ABUSE ACT OF 1986

#### 1. The CFAA's "Protected Computer" Element

Counts One through Seventeen of the Indictment charge Mr. Singla with intentionally causing damage to a "protected computer," in violation of 18 U.S.C. § 1030(a)(5)(A). (Doc. 1 ¶¶ 1-5). Count Eighteen charges Mr. Singla with accessing

2

a computer without authorization or exceeding authorized access and thereby obtaining information from a "protected computer," in violation of 18 U.S.C. § 1030(a)(2)(C). (*Id.* ¶¶ 6-7). All eighteen charges require the government to prove, as a fundamental prerequisite to federal jurisdiction, that each computer that Mr. Singla allegedly damaged (Counts One through Seventeen) or accessed without authorization (Count Eighteen) constituted a "protected computer" within the meaning of the CFAA at the time of the offense. The CFAA defines the term "protected computer" to mean "a computer[2] . . . which is used in or affecting interstate or foreign commerce or communication." 18 U.S.C. § 1030(e)(2)(B).

The federal courts appear to have uniformly held that, to satisfy the CFAA's "protected computer" element, the computer or device at issue must have been connected to the internet or used for interstate communication at the time of the offense. *See, e.g., United States v. Fowler*, 445 Fed. Appx. 298, 300 (11th Cir. 2011) (*per curiam*) (rejecting challenge to "protected computer" element because victim computers "communicated with laboratories and outside healthcare agencies ***through the internet***, which 'is an instrumentality of interstate commerce.'"

---

[2] The CFAA defines the term "computer" as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device." 18 U.S.C. § 1030(e)(1).

3

(emphasis added)); *United States v. Trotter*, 478 F.3d 918, 921 (8th Cir. 2007) (*per curiam*) (rejecting challenge to "protected computer" element because victim computers were **connected to the Internet** and communicated with out-of-state computers) (emphasis added); *hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 999 (9th Cir. 2019), *vacated on other grounds*, 445 Fed. Appx. 298 (2021) (interpreting term "protected computer" to include "effectively ***any computer connected to the Internet***" (emphasis added));³ *United States v. Wadford*, 331 Fed. Appx. 198, 202-203 (4th Cir. 2009) (rejecting challenge to "protected computer" element because victim computers "were used by employees in South Carolina to communicate with employees in Italy and . . . employees in Italy used the computers to access electronic data stored in South Carolina."). Further, the Justice Department has taken the position in a published task force report that "the CFAA ***only prohibits hacking computers that are connected to the Internet*** (or that meet other narrow criteria for protection)." U.S. Dep't of Justice, *Report of the Attorney General's Cyber Digital Task Force*, at 121 (July 2, 2018) (emphasis added);⁴ *see also Tri-County Telephone Assoc. v. Campbell*, No. 17-CV-89-F, 2019 WL 7841073, at *3 (D. Wy. Dec. 4, 2019) ("As he observes, a computer is only protected [under the CFAA] if it is

---

³ Courts "must interpret [a] statute consistently, whether [they] encounter its application in a criminal or noncriminal context." *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004). Civil suits involving the CFAA therefore can provide useful guidance regarding the interpretation of the statute.

⁴ *See* https://www.justice.gov/archives/ag/page/file/1076696/download.

*connected to the internet*." (emphasis added)).

## 2. The CFAA's "Damage" Element

With respect to Counts One though Seventeen of the Indictment, charging violations of Section 1030(a)(5)(A), the CFAA further requires the government to prove that Mr. Singla intentionally caused "damage" to such protected computer. The CFAA defines "damage" to mean "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). This statutory definition encompasses "technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data," but it does not include mere "misuse." *Van Buren*, 141 S. Ct. at 1660. Nor does it include the mere copying or downloading of data or files, or the deletion of data or files that remain available through other means. *Cheney v. IPD Analytics, L.L.C.*, No. 08-23188-CIV, 2009 WL 1298405, at *6 (S.D. Fla. Apr. 16, 2009), *report and recommendation adopted sub nom. Cheney v. IPD Analytics, LLC*, No. 08-23188-CIV-MORENO, 2009 WL 2096236 (S.D. Fla. May 8, 2009); *Volk v. Zeanah*, No. 608CV094, 2010 WL 318261, at *3 (S.D. Ga. Jan. 25, 2010). "[C]ourts have consistently held that 'damage' refers to 'the destruction, corruption, or deletion of electronic files, the physical destruction of a hard drive, or any 'diminution in the completeness or usability of the data on a computer system.'" *New South Equip. Mats, LLC v. Keener*, 989 F. Supp. 2d 522, 529 (S.D. Miss. 2013); *see also Resdev,*

5

*LLC v. Lot Builders Ass'n, Inc.*, No. 6:04-CV-1374-ORL-31-DAB, 2005 WL 1924743, at *5 n.3 (M.D. Fla. Aug. 10, 2005) ("'Integrity' . . . ordinarily means 'wholeness' or 'soundness,' and contemplates, in this context, some diminution in the completeness or useability of data or information on a computer system.").

As set forth below, the charges against Mr. Singla must be dismissed in their entirety for failure to state an offense under Rule 12(b)(3)(B)(v) because none of the computers at issue in the Indictment constitute "protected computers" under the CFAA as a matter of law. Further, Counts One through Seventeen of the Indictment must be dismissed for failure to state an offense for the additional reason that the government cannot satisfy the "damage" element of the CFAA as a matter of law as to such counts.

### III. ARGUMENT

#### A. The Indictment Should be Dismissed in its Entirety Because None of the Alleged Victim Computers Were Connected to the Internet.

The putative victim devices alleged in the Indictment in this case consist of the Ascom telecommunications system (Count One), sixteen Lexmark printers (Counts Two through Seventeen), and a Hologic R2 Digitizer (Count Eighteen). None of these devices were connected to the Internet at the time of the alleged cyberattack. Instead, following standard computer network security protocols to protect sensitive data—especially a hospital that possesses a staggering amount of highly sensitive and heavily regulated personally identifying information and

6

protected health information—these devices were securely behind firewalls, internal to the hospital network, and not internet-accessible.

In pre- and post-indictment discussions with the government, the government has failed to offer any meaningful explanation for this fatal flaw in its case. Further, the government has communicated its belief that Mr. Singla did not commit the alleged cyberattack on GMC externally, via the Internet, but instead while he was physically present at GMC, via GMC's local network. Nevertheless, the government has indicated that, because GMC employees could access the GMC network remotely via a virtual private network ("VPN")[5] and access certain GMC devices while on GMC's local network, those devices were necessarily connected to the internet as the CFAA requires. The government misunderstands the relevant network infrastructure, and this theory fails as a matter of law.

A VPN connection does not connect a firewall-protected device to the internet or make it accessible through the internet; it merely enables a remote user, such as a company employee, to connect to the local network, or intranet, to which such devices are connected. Indeed, this is one of the main purposes of a workplace VPN:

---

[5] "A virtual private network (VPN) extends a private network across a public network and enables users to send and receive data across shared or public networks as if their computing devices were directly connected to the private network. The benefits of a VPN include increases in functionality, security, and management of the private network. It provides access to resources that are inaccessible on the public network and is typically used for remote workers." https://en.wikipedia.org/wiki/Virtual_private_network.

"to enable a mobile worker to access important tools ***without exposing them to the public Internet***." See https://en.wikipedia.org/wiki/Virtual_private_network (emphasis added). Accordingly, because none of the putative victim devices were connected to the internet at the time of the alleged cyberattack, the Indictment must be dismissed in its entirety for failure to state an offense.[6]

### B. Counts One through Seventeen of the Indictment Should be Dismissed Because there is No Legally Cognizable "Damage."

Counts One through Seventeen of the Indictment must also be dismissed for failure to state an offense because there is no "damage" that is legally cognizable under the CFAA. The Indictment does not allege any details elucidating, what, if any, damage Mr. Singla caused to the putative victim devices. However, in pre- and post-indictment discussions with the government, the government has asserted that the attack temporarily interrupted GMC's internal Ascom telecommunications system, and that it caused the Lexmark printers identified in Counts Two through Seventeen to each print several sheets of paper in the early morning, well before regular business hours. This is insufficient as a matter of law.

Specifically, a temporary service interruption does not constitute "the destruction, corruption, or deletion of electronic files, the physical destruction of a

---

[6] The government has also asserted that GMC employees could use the Ascom system to place or receive phone calls outside of the hospital. Mr. Singla's review of the relevant specifications and user manuals contradicts this claim. Regardless, this issue has no bearing on the devices at issue in Counts Two through Eighteen.

hard drive, or any 'diminution in the completeness or usability of the data on a computer system.'" *New South Equip. Mats, LLC*, 989 F. Supp. 2d at 529; *Resdev, LLC*, 2005 WL 1924743, at *5 n.3. Further, causing a printer to execute a print job in no way damages that printer or any computer as required under the CFAA. In analogous contexts, federal courts have so held, rejecting CFAA "damage" allegations as a matter of law that were predicated upon unwanted calls or text messages diminishing a mobile device's finite memory or battery resources. *Czech v. Wall St. on Demand, Inc.*, 674 F. Supp. 2d 1102, 1116–17 (D. Minn. 2009); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1067 (N.D. Cal. 2012) ("Damage under the CFAA does not occur simply by 'any use or consumption of a device's limited resources,' but rather 'damage' must arise from an impairment of performance 'that occurs when the cumulative impact of all calls or messages at any given time exceeds the device's finite capacity so as to result in a slowdown, if not an outright 'shutdown,' of service.").

**C. Due Process Compels the Pretrial Resolution of These Issues.**

Mr. Singla understands that, in evaluating a motion to dismiss for failure to state an offense pursuant to Rule 12(b)(3)(B)(v), relevant Eleventh Circuit precedent ordinarily bars consideration of facts beyond the face of the Indictment. *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992) (*per curiam*). Mr. Singla nevertheless submits that the ordinary rule offends due process where, as here, the

9

government does not dispute the facts relevant to the resolution of the Motion and the Court can resolve the issues as a matter of law. *See* E-Mail from AUSA Kaushal to D. Chaiken dated February 22, 2022 (attached hereto as Exhibit **A**). Under these circumstances, forcing Mr. Singla to endure the financially and emotionally devastating process of preparing for a trial to defend himself against non-existent federal crimes is wholly unjust and unconstitutional. *See United States v. McKay*, 45 F. Supp. 1001, 1004–05 (E.D. Mich. 1942) ("[A]s a practical matter such a rule under circumstances as they exist in this case serves no useful purpose. On the contrary, it impedes and delays the administration of justice. Because if the uncontroverted facts upon which the Government relies do not constitute the crime charged by the indictment there is no good purpose served in causing both the Government and defendant to make extensive and expensive trial preparations, to impanel a jury, to spend several weeks in hearing many witnesses, some no doubt from distant points, and then being compelled to direct a verdict for the defendant because the facts proven, and already conceded by the defendant to be the facts, do not constitute the offense charged."); *see also* Justice Manual § 9-27.220 ("both as a matter of fundamental fairness and in the interest of the efficient administration of justice, no prosecution should be initiated against any person unless the attorney for the government believes that the admissible evidence is sufficient to obtain and sustain a guilty verdict by an unbiased trier of fact.").

## IV. CONCLUSION

WHEREFORE, Mr. Singla requests that the Court grant this Motion, and dismiss the Indictment against Mr. Singla in its entirety. In the alternative, Mr. Singla requests an evidentiary hearing on these issues in order to determine whether the government's case should be permitted to proceed.

Respectfully submitted, this 20th day of April, 2022.

> */s/ David M. Chaiken*
> David M. Chaiken
> Georgia Bar No. 118618
> CHAIKENLAW LTD.
> One Atlantic Center
> 1201 W. Peachtree Street, Suite 2300
> Atlanta, Georgia 30309
> (404) 795-5005 (Phone)
> (404) 581-5005 (Facsimile)
> david@chaiken.law
>
> *Counsel for Defendant Vikas Singla*

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which automatically serves notification of such filing to all counsel of record:

> Samir Kaushal
> *Assistant United States Attorney*
> U.S. Attorney's Office
> 75 Ted Turner Drive S.W., Suite 600
> Atlanta, GA 30303
>
> Laura Fong
> *Trial Attorney*
> Natalie Tecimer
> *Trial Attorney*
> Computer Crime & Intellectual Property Section
> U.S. Department of Justice, Criminal Division

This 20th day of April, 2022.

/s/ *David M. Chaiken*
David M. Chaiken
Georgia Bar No. 118618
david@chaiken.law